IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE SEARCH OF,
Grey Apple iPhone with phone
number (304) 437-7737

Case No. 2:22-mj-00070

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Asa M. Gravley being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, that is, a cellular telephone currently in law enforcement possession (the Device) as described herein and in Attachment A, and the extraction from that property of electronically stored information described in Attachment B.

2. I am employed as a Special Agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) with the United States Department of Justice and have been since May 2021. I am a graduate of the Federal Law Enforcement Training Center's (FLETC) Criminal Investigator Training Program (CITP) as well as the ATF National Academy. I have received investigative training in overt and/or

1

covert methods to investigate violent criminal acts by individuals, organizations and/or gangs. These violent acts commonly involve the criminal use and transfer of firearms, illicit drug trafficking, acts of arson, criminal possession or use of explosives and/or destructive devices. I have participated in numerous investigations involving armed drug trafficking and violent crimes. Because of my training and experience, I am empowered to investigate violations of federal law. I have been the affiant on search warrants. As a case agent, I have experience in the fundamentals of mobile communications, electronic and cellular data analysis. As a case agent, I also have experience in reviewing, analyzing, and utilizing forensic evidence obtained from mobile devices to further investigations into crimes such as drug trafficking and violent crimes.

3. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am empowered to investigate violations of federal law. I have been the affiant on search warrants. As a case agent, I have experience in the fundamentals of mobile communications,

electronic and cellular data analysis. As a case agent, I also have experience in reviewing, analyzing, and utilizing forensic evidence obtained from mobile devices to further investigations into crimes such as drug trafficking, firearms offenses, and violent crimes.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

### Identification of Device(s) to Be Examined

5. The property to be searched includes a grey, Apple iPhone, contained within a black case, and phone number 304-437-7737. The Device is currently in ATF custody at the ATF Charleston Field Office located at 300 Summers Street, Suite 1400, Charleston, West Virginia.

6. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

**Probable Cause**

7. On May 14, 2022, the St. Albans Police Department (SAPD) responded to a call for a domestic assault at 1929 7th Avenue, St. Albans, Kanawha County, West Virginia. Upon arrival, it was learned that Whitney Simmons and her husband Stephen Ernest SIMMONS (SIMMONS) had been involved in an on-going domestic dispute. Mrs. Simmons provided a statement to officers that her husband was a habitual daily user of marijuana, and she also believed methamphetamine. As a result, a West Virginia State search warrant was executed at SIMMONS' residence that same day, which resulted in the seizure of the following items: fourteen (14) firearms, approximately 8,956 rounds of assorted ammunition, a quantity of suspected marijuana, a quantity of suspected methamphetamine, a digital scale with suspected marijuana residue, plastic baggies, and an Apple iPhone.

8. Prior to May 14, 2022, on or about October 09, 2019, SIMMONS, admitted to being an unlawful user of marijuana. SIMMONS was being interviewed as part of an on-going ATF investigation involving missing firearms from a former Federal Firearms Licensed dealer. During the interview, SIMMONS stated that he used to be addicted to pain pills

4

and that once he kicked that habit, approximately (5) years ago, he began self-medicating by smoking marijuana. SIMMONS stated that he smoked marijuana on average every other day, during the past (2) years, and knew that it was illegal. As part of this investigation, a Cooperating Subject (CS) provided screenshots of conversations between himself/herself and SIMMONS. The screenshots were of conversations with SIMMONS on his cellphone and the CS, with regards to firearms and their possession. On this same date of Oct 09, 2019, a West Virginia State Search Warrant was executed on SIMMONS' residence, 1929 7th Avenue, St. Albans, Kanawha County, West Virginia, in which several ounces of marijuana were seized. At the time of that incident, SIMMONS was in possession of numerous firearms that included a possible machinegun, silencer, and a large quantity of ammunition.

9. Based upon your affiant's training and experience individuals like SIMMONS who are unlawful users/addicted to drugs and in possession of firearms, evidence of their illegal activities remain in the memory of their phones. Such evidence includes messages, contact lists, call logs, photographs of drugs and drug use as well as firearm possession and use, money, co-conspirators, information relative to the ownership, registration, and

5

usage of the device, location information in the form of address searches and mapping information relative to travel in furtherance of the enterprise as well as email communication with suppliers and customers, calendar information, ledgers, and notes.

10. The Device is currently in storage at the ATF Charleston Field Office located at 300 Summers Street, Suite 1400, Charleston, WV 25301. Based on my training and experience, I know the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the ATF.

### Technical Terms

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land

line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage

7

media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

C. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A Global Positioning System (GPS) navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where the device has been. Some GPS navigation devices can give a user driving or walking directions to another location.

8

These devices can contain records of the addresses or locations involved in such navigation. The GPS system consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant (PDA) is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mails. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage

media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

13. Based on my training, experience, and research, I know the Device has the capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### Electronic Storage and Forensic Analysis

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. ***Forensic evidence.*** As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

16. **Nature of examination.** Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device and consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer- assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17.  **Manner of execution.** Because this warrant seeks only permission to examine the device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### Conclusion

18.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device as described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Asa Gravley*
Asa M. Gravley
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, and Explosives

Subscribed and sworn to before me by telephone pursuant to Fed. R. Crim. P. 41(d)(3) on June 16, 2022:

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

The property to be searched includes a grey, Apple iPhone, contained within a black case, and phone number 304-437-7737. The Device is in ATF custody at the ATF Charleston Field Office located at 300 Summers Street, Suite 1400, Charleston, WV 25301.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the Device as described in Attachment A that relates to violations of the following: 18 U.S.C. § 922(g)(3) (Unlawful User *in Possession of a Firearm*); 26 U.S.C. § 5861 (d) (Unlawful possession of unregistered NFA firearm) such as the following:

    a. lists of customers/suppliers and related identifying information;
    b. types, amounts, and prices of drugs purchased as well as dates, places, and amounts of specific transactions;
    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);
    d. any information recording Stephen SIMMONS' schedule or travel;
    e. all bank records, checks, credit card bills, account information, and other financial records;
    f. types, amounts, and prices of any firearms trafficked/purchased/possessed, as well as dates, places, and amounts of specific transactions.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage

15

(such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.